IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL D. WOOSLEY, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | NO. 15-4778 |
| v. | : | |
| | : | |
| THE U.S. DISTRICT COURT, DISTRICT, | : | |
| OF CONNECTICUT; THE HONORABLE | : | |
| ALVIN W. THOMPSON, UNITED STATES | : | |
| DISTRICT JUDGE; and DAVID H. SMITH | : | |
| AND KIMBERLY A. SMITH, | : | |
| Defendants. | : | |

**Jones II,      J.**                                                                 **August 10, 2016**

**<u>MEMORANDUM</u>**

Now pending before the Court is Plaintiff's Complaint [hereinafter "Compl."] (Dkt No. 1), the Statement of Interest filed by the United States [hereinafter "SI"] (Dkt No. 3), Plaintiff's Answer to Defendant's Statement of Interest [hereinafter "Ans."] (Dkt No. 5) and Plaintiff's Response to Order to Show Cause as to Why the Complaint Should Not be Dismissed [hereinafter "Resp."] (Dkt No. 9).

For the reasons that follow, Plaintiff's Complaint will be dismissed with prejudice and without leave to amend.

## I.      Standard of Review

The court may dismiss paid complaints *sua sponte* under Rule 12(b)(1) and Rule 12(b)(6), but plaintiffs generally must be given notice and an opportunity to respond. *Roman v. Jeffes*, 904 F.2d 192, 196 (3d Cir. 1990); *see also Oatess v. Sobolevitch*, 914 F.2d 428, 430 n.5 (3d Cir. 1990) ("We have observed that a district court might, *sua sponte*, raise the issue of the deficiency of a complaint under Rule 12(b)(6), so long as the plaintiff is accorded an opportunity to respond."). Even though it is generally within the court's discretion whether to address the sufficiency of the complaint sua sponte, the court is *obligated* to address the issue of standing *sua sponte*. *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996); *see also Frempong v. Nat'l City Bank of Indiana*, 452 Fed. App'x 167, 170 (3d Cir. 2011) ("Courts are obligated to raise the issue of standing *sua sponte*."). In addition, the court may *sua*

*sponte* dismiss complaints as a sanction for contumacious conduct pursuant to the six *Poulis* factors. *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 866 (3d Cir. 1984).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233 (internal quotation and citation omitted). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).

## II.    Background

On August 21, 2015, Paul D. Woosley [hereinafter "Plaintiff"] filed a Complaint under 42 U.S.C. § 1983 based on a verbal Order made by Hon. Alvin W. Thompson (D. Conn) to Plaintiff enjoining him from seeking a declaration that two child-custody decrees in Texas are void. (Compl. 3.) Plaintiff claims that the Judge acted in excess of his jurisdiction in ruling on a domestic relations matter and violated Plaintiff's due process rights by preventing him from pursuing his child custody rights. Plaintiff seeks $22 million dollars. (Compl. 3) On September 2, 2015, the United States filed a "Statement of Interest" seeking *sua sponte* dismissal of the federal defendants – the Honorable Alvin W. Thompson and the District of Connecticut. David H. Smith and Kimberly A. Smith have not entered an appearance.

The factual background of this case has been recounted in detail by the Second Circuit in *Smith v. Woosley*, 399 F.3d 428, 429-31 (2d Cir. 2005)[1] and is as follows:

> Woosley is the biological father of Kyle Smith ("Kyle"), who was born in Pennsylvania on July 8, 1992, and then transported to Texas. Prior to the birth, the

---

[1] Although the court is generally limited to the information contained in the complaint, the court may also consider exhibits attached to the complaint and matters of public record. *Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 127 (3d Cir. 2016).

biological mother had proposed placing the child for adoption. Shortly after the birth, Woosley signed an Affidavit of Waiver of Interest in Child, and the biological mother and her husband (who was not Woosley) executed an Affidavit of Relinquishment of Parental Rights. *See Woosley v. Smith*, 925 S.W.2d 84, 85–86 (Tex. App. San Antonio 1996) ("*Woosley–Texas I*"). On July 15, 1992, the 225th District Court, Bexar County, Texas, entered a decree terminating the parental rights of Woosley and the biological mother, and on July 22, 1992, entered a decree terminating the parent-child relationship between Kyle and the husband of his biological mother. *See id.* On March 1, 1993, the Bexar County court entered a decree of adoption making the Smiths the adoptive parents of Kyle. *See id.*

In July 1993, Woosley filed suit in the Bexar County court against the Smiths and their adoption agency, seeking to set aside that court's decrees. The court rejected his claims and upheld both decrees. *See id.* On April 10, 1996, that decision was upheld on Woosley's appeal to the Texas Court of Appeals.[2] *See id.* at 85. Woosley's subsequent appeal to the same court was rejected on grounds of res judicata and collateral estoppel, *see Woosley v. Adoption Alliance* ("*Woosley–Texas II*"), No. 04–00–00343–CV, 2001 WL 687571 (Tex. App. San Antonio June 20, 2001), and the Supreme Court denied certiorari, *see Woosley v. Adoption Alliance*, 537 U.S. 878, 123 S.Ct. 78, 154 L.Ed.2d 133 (2002). The Texas appellate court also upheld the imposition of sanctions against Woosley for a frivolous pleading. *See Woosley–Texas II*, 2001 WL 687571, at *1.

In December 1996, Woosley filed suit in the District Court for the Western District of Pennsylvania, seeking a declaration that his parental rights had not been validly terminated and an order setting aside the adoption decree entered by the Texas court. He alleged fraud and violation of his federally protected civil rights. In an unreported decision dated September 23, 1998, the Pennsylvania District Court dismissed the suit as time-barred ("*Woosley–Pennsylvania*"), ruling that the limitations period for both claims was two years. *See* 42 Pa.C.S.A. § 5524(7); *Urrutia v. Harrisburg County Police Department*, 91 F.3d 451, 457 n. 9 (3d Cir. 1996). The Third Circuit affirmed, *Woosley v. Smith*, 191 F.3d 446 (3d Cir. 1999) (table), and the Supreme Court denied a petition for a writ of certiorari, *Woosley v. Smith*, 528 U.S. 1159, 120 S.Ct. 1169, 145 L.Ed.2d 1079 (2000).

In July 2000, Woosley attempted to kidnap Kyle, then age 7, by placing him into a car in front of the Smiths' home. The attempt was foiled by Kyle's nine-

---

[2] This Court notes that Plaintiff's initial challenge to the adoption decree was litigated on the merits. In addition to addressing the procedural issues of Plaintiff's challenge to the decree, the Court of Appeals of Texas explained that:

> In the present case, the record clearly indicates that, recognizing the child's best interest, appellant voluntarily relinquished his rights to Kyle and had every intention of doing so even prior to the baby's birth. The record further indicates that the termination proceeding was in strict compliance with the Family Code. Under these circumstances, we find it inconceivable that appellant would now attempt, when the child is three years old, to take him from the only family he has known. *See Skrobarcek v. Stephenson*, 249 S.W.2d 83, 85 (Tex. Civ. App.—San Antonio 1952, no writ) (holding where parental tie has been severed over long period of time, during which child has formed new associations, right of parent must yield to welfare of child).

*Woosley v. Smith*, 925 S.W.2d 84, 88 (Tex. App. 1996).

year-old brother who opened the rear door of the car to free him. A baby-sitter called the police. In May 2002, pursuant to a plea agreement, Woosley was convicted in the Connecticut Superior Court of various offenses, including custodial interference in the first degree. As a condition of his plea agreement, Woosley is precluded from having any contact with Kyle.

Two weeks prior to his conviction, Woosley filed a suit in the Connecticut Superior Court, seeking visitation rights and apparently contending that the Texas decrees were void. The Superior Court dismissed the suit, ruling that Woosley's parental rights had been terminated by the Texas court and that a requirement for visitation rights is a "parent-like relationship." *Woosley v. Smith*, FA020392653(S), 2003 WL 1490317, at *2 (Conn. Super. Ct. Mar. 3, 2003).

In January 2003, the Smiths filed the pending suit in the Connecticut District Court, seeking damages for vexatious litigation and intentional infliction of emotional distress, and an injunction barring Woosley from further attempts to challenge the Texas decrees. In February 2003, the District Court granted a permanent injunction prohibiting Woosley from litigating the questions of whether his parental rights were validly terminated by the Texas court and whether the adoption decree should be set aside. The District Court acted on the basis of the "relitigation exception" to 28 U.S.C. § 2283, ruling that an injunction was "necessary and appropriate to protect the collateral estoppel effect of the judgment" of the Pennsylvania District Court. The injunction was entered March 4, 2003.

The Second Circuit concluded that the Anti-Injunction Act's re-litigation exception applied and therefore upheld the injunction with a caveat in the event that Plaintiff could "(1) locate a jurisdiction in which a limitations period remains open (thereby, in accordance with *Semtek* [*v. Intern. Inc. v. Lockheed Martin Corp*, 532 U.S. 497 (2001)], escaping the preclusive effect of the Pennsylvania District Court's judgment), (2) can obtain personal jurisdiction over the Smiths, and (3) is otherwise then entitled to challenge the Texas decrees." The Second Circuit's conclusion, *in toto*, states as follows:

*Semtek*'s explication of how the preclusive effect of a diversity court's dismissal of claims as time-barred is to be determined, together with *Choo*'s [*Chick Kam Choo v. Exxon Corp*., 486 U.S. 140 (1988)] admonition that the relitigation exception permits protection against relitigation only of what a prior federal court has actually decided, guide our decision as to the extent of protection the Connecticut District Court was entitled to give to the Pennsylvania District Court's judgment. Woosley claimed in the Pennsylvania Court that the Texas decrees were invalid, and the Pennsylvania Court rejected his challenge on the ground that his claims were barred by the statute of limitations. We have located no Pennsylvania state court decision determining whether Pennsylvania state courts deem a limitations dismissal as barring only the remedy or barring the pursuit of the claim even in jurisdictions with longer limitations periods. Unlike the circumstances in *Semtek*, however, the Pennsylvania District Court's judgment bars further litigation to challenge the Texas decrees no matter which approach to

4

> time-barred dismissals is taken by Pennsylvania state courts. The reason is that
> when the Connecticut District Court entered its injunction, nearly eleven years
> had passed since the entry of the Bexar County court's decrees and seven years
> had passed since the decision of the Texas Court of Appeals ruling that the
> decrees could not be set aside. Woosley has made no claim that his challenges to
> the Texas decrees remain viable within the limitations period of any jurisdiction,
> and we are aware of none in which they could now be brought. At most, the
> Pennsylvania judgment left Woosley free to challenge the Texas decrees only in a
> jurisdiction with relevant limitations periods longer than those of Pennsylvania.
> But since no jurisdiction of which we are aware has a limitations period of such
> length as to leave Woosley's challenges to the Texas decrees now viable, the
> likely effect of the Pennsylvania judgment is now to bar Woosley from
> challenging those decrees in any court. As the Eighth Circuit has noted, "[T]he
> relitigation exception may apply even if the merits of the case were never reached,
> provided that a critical issue concerning the case has been adjudicated properly."
> *Canady v. Allstate Insurance Co.*, 282 F.3d 1005, 1015 (8th Cir. 2002). The
> statute of limitations ruling in Pennsylvania resolved a critical issue that, perhaps
> at the time and very likely now, leaves Woosley no longer entitled to contest the
> validity of the Texas decrees.

*Woosley*, 399 F.3d at 435-36. Plaintiff now brings suit under 28 U.S.C. § 1983 to challenge the

injunction issued by the District of Connecticut, which was upheld by the Second Circuit with

the aforementioned modifications. (Compl. 3.) Although Plaintiff makes numerous allegations as

to "Judge Thompson," at no point in his Complaint does Plaintiff explain any action taken by

David and Kimberly Smith that deprived Plaintiff of his civil rights.

In Plaintiff's Response to this Court's Order to Show Cause, Plaintiff states that he

"complains not merely about the verbal order of August 22, 2013, but also about the entire

course of the Injunction, which represents an ongoing wrong that included the verbal order that

was issued pursuant to the Injunction." (Resp. ¶ 14) Plaintiff does not disclose that the Injunction

was entered on March 4, 2003, and a motion to amend the Injunction was denied on September

29, 2003, twelve years before Plaintiff filed suit in this Court. *Smith v. Woosley*, 399 F.3d 428,

429-31 (2d Cir. 2005). The Injunction was upheld by the Second Circuit with slight modification

and prohibits Plaintiff from seeking to re-litigate the issue of the validity of Texas state court

decrees unless he can find a jurisdiction where the statute of limitations remains open and

personal jurisdiction over the Smiths can be secured. *Id.* On June 21, 2013, ten years after the

Injunction was entered, the Smiths filed a Motion for Civil Contempt Order based on Plaintiff's

violation of the Injunction. *Motion for Contempt, Smith v. Woosley*, Civ. A. No. 03-143, Dkt No.

84 (D. Conn. June 21, 2013). The Hon. Thompson issued a verbal Order on August 22, 2013,

5

which is the subject of Plaintiff's complaint. *Smith v. Woosley*, Civ. A. No. 03-143 (D. Conn. Aug. 22, 2013). Plaintiff argues that the Injunction itself, which was entered ten years before the verbal Order, represents an ongoing course of conduct and requests leave to amend to include the Injunction. (Resp. ¶ 14.) But the Injunction is plainly outside the statute of limitations and therefore leave to amend to include the Injunction would be futile. *Sameric Corp. of Del. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998) (recognizing that a two-year statute of limitations applies to Section 1983 claims). Plaintiff's case is analogous to *Sameric* in that he may have allegedly been harmed in the same manner by different aspects of the same process twice, but he could have brought suit independently regarding the Injunction and then again regarding the verbal Order; therefore, the continuing wrong doctrine does not apply. *Id.* at 599-600. Plaintiff fails to provide legal support for why he should be permitted to amend his complaint to include the Injunction. And, even if the Injunction were to fall within the statute of limitations, Plaintiff's claim is still without merit as the Court will address.[3] Thus, leave to amend would be futile and will therefore be denied.

### III.    *Sua Sponte* Dismissal is Necessary Because Plaintiff Lacks Standing

Standing "is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution." *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.,* 123 F.3d 111, 117 (3d Cir. 1997). A plaintiff must establish standing in order for the court to possess jurisdiction. *Id.* "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an injury in fact that is (a) concrete and particularized, and (b) actual or imminent rather than conjectural or hypothetical. *Id.* Second, the injury must be fairly traceable to the defendant. *Id.* Third, and finally, it must be likely, rather than speculative, that the injury will be redressed by a favorable decision. *Id.* at 561. "Standing is established at the pleading stage by setting forth specific facts that indicate that the party has been injured in fact or that injury is imminent, that the challenged action is causally connected to the actual or imminent injury, and that the injury may be redressed by the cause of action." *Anjelino v. N.Y. Times Co.,* 200 F.3d 73, 88 (3d Cir. 2000). "[T]he Supreme Court has held that

---

[3] In order to explain why leave to amend to include the Injunction fails for the same reasons as the verbal Order, the court will address the merits of Plaintiff's suit as if the Injunction could be included as well.

courts must decide Article III standing issues, even when not raised by the parties, before turning to the merits." *Chong v. Dist. Dir., I.N.S.*, 264 F.3d 378, 383 (3d Cir. 2001).

Plaintiff seeks $22 million dollars in damages as a result of an injunction issued by the Hon. Alvin W. Thompson of the United States District Court for the District of Connecticut. Plaintiff claims that he was harmed by this Order, "which prevented him from pursuing his fundamental status as a lawful parent, also prevented him from exercising his fundamental right to seek a relationship with his child." (Compl. 3.) However, even without any such Order, Plaintiff would be prevented from such a course of action by: (1) the legal doctrine of res judicata, (2) the applicable statute of limitations, and (3) mootness due to Kyle obtaining the age of majority. Therefore, the alleged injury would occur based on free-standing legal doctrines and is not fairly traceable to the Order at issue.

First, Plaintiff's right to continue litigating his status as Kyle's lawful parent and to have a relationship with Kyle has been adjudicated at least five separate times in five different fora. As the Second Circuit noted, "Woosley has lost all of his Texas state court appeals of the adoption and termination-of-parental-rights decrees, has lost the challenge to the adoption decree that he brought in the Pennsylvania District Court, has lost his appeal of that federal court judgment, has lost the Connecticut state court challenge to the validity of the adoption and termination decrees that he brought in the course of seeking visitation rights, and has been convicted of custodial interference after attempting to kidnap the Smiths' lawfully adopted child. The Smiths are clearly entitled to an injunction." *Woosley*, 399 F.3d at 434. But even this lengthy review by the Second Circuit is not complete.

Further matters at least include a Writ of Habeas Corpus Concerning Custody of Child filed in the Connecticut Superior Court that was *sua sponte* dismissed as unmeritorious without being docketed; a suit against the Connecticut Superior Court and Unnamed Prosecutors after Plaintiff's arrest for various felonies in connection with his attempted kidnap of Kyle and the Superior Court's refusal to hear his petition, *Woosley v. Superior Court of Fairfield at Bridgeport and Yet Unnamed Prosecutors of Fairfield County*, No. 05-704 (D. Conn. May 2, 2005); and a suit against The Adoption Alliance, Judge Haberman (45th District of Texas), Bexar County 225th Judicial District Court, and Justice Alma L. Lopez (4th Court of Appeals of Texas), filed in the Western District of Texas, which was dismissed and affirmed on grounds that the *Rooker-Feldman* doctrine precluded the federal court from hearing what was essentially an

appeal from the Texas state courts. *Woosley v. The Adoption Alliance, et al.*, D.C. Dkt. No. 02-372, App. Dkt No. 02-51304 (5th Cir. Nov. 25, 2003) ("this action is barred under the *Rooker-Feldman* doctrine, because appellant is attempting to overturn the state court judgments denying his requests to vacate the decree of adoption and decree of termination").

In reviewing Plaintiff's history of vexatious litigation, the decisions issued by the courts, and the sanctions granted against Plaintiff, it is evident that it is not the Hon. Thompson's injunction that prevents Plaintiff from seeking parental rights, but the well-established legal doctrine of res judicata. The doctrine of res judicata is intended to "protect litigants from the burden of relitigating an identical issue with the same party or his privy and . . . promote judicial economy be preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 (1979). In order to pursue further litigation alleging that Plaintiff is the lawful parent entitled to a relationship, Plaintiff would file a sixth suit against the Smiths. Forcing the Smiths to relitigate the issue of Plaintiff's parental rights for a sixth time would be burdensome both to the Smiths and to our judicial system. Therefore, such a suit would be dismissed for failure to state a claim because it would be "obvious, either from the face of the pleading or from other court records, that an affirmative defense such as res judicata will necessarily defeat the claim." *Taylor v. Visinsky*, 534 Fed.App'x 110, 112 (3d Cir. 2013) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

Plaintiff argues that res judicata does not apply because the original judgment from the Texas State Court terminating Plaintiff's parental rights is void. (Resp. ¶ 3-8.) The Court agrees that a void judgment is not entitled preclusive effect and is subject to collateral attack in a subsequent suit. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010). However, once a party collaterally attacks the allegedly void judgment and the judgment is determined to be valid, that subsequent judgment determining validity is then afforded preclusive effect. Here, Plaintiff has already collaterally attacked the Texas state court decree terminating his parental rights and the validity of the decree was upheld. *Woosley v. Smith*, 925 S.W.2d 84, 85 (Tex. App. 1996) ("Appellant bases his complaint on his contention that the decree terminating his parental rights is void as a matter of law. We affirm the decision of the trial court."). Four years later, Plaintiff attacked the validity of the decree again, but the Texas Court of Appeals held that the determination as to the validity of the decree was res judicata. *Woosley v. The Adoption All.*, No. 04-00-00343-CV, 2001 WL 687571, at *1 (Tex. App. June 20, 2001) ("Appellant's first issue,

that the trial court erred in denying his motion to vacate void decrees is barred by the wellestablished principles of res judicata and collateral estoppel."). Therefore, although Plaintiff was well within his rights to attack the validity of the decree in a subsequent suit, he cannot forever continue to attack the validity of the decree without ever running afoul of res judicata. Because Plaintiff would be barred from future litigation seeking to establish that he is the lawful parent entitled to visitation and would likely face Rule 11 sanctions or the state equivalent for bringing such a suit, Plaintiff cannot claim that the inability to pursue a relationship with his child is a result of the Hon. Thompson's Order protecting the judgment of the Western District of Pennsylvania.

Second, Plaintiff's claimed injury – being deprived of the right to pursue his lawful status as parent – is not fairly traceable to Defendants because he is still permitted to pursue that right by filing suit in any jurisdiction in which the statute of limitations remains open. As was first recognized by the Western District of Pennsylvania nearly ten years ago and repeatedly by many courts since then, Plaintiff is far outside any applicable statute of limitations to relitigate the issue of his parental rights. *See Smith v. Woosley*, 399 F.3d 428, 436 (2d Cir. 2005) (no jurisdiction of which we are aware has a limitations period of such length as to leave Woosley's challenges to the Texas decrees now viable, the likely effect of the Pennsylvania judgment is now to bar Woosley from challenging those decrees in any court"). And if Plaintiff could find a jurisdiction in which the statute of limitations has not expired, the Injunction specifically permits Plaintiff to litigate the issue in such a jurisdiction. The Injunction issued by the District of Connecticut, as modified by the Second Circuit and enforced by the Verbal Order, does not bar Plaintiff from filing a lawsuit that would not otherwise be barred by the statute of limitations. *Id.* ("[W]e will modify the injunction to permit Woosley to return to the Connecticut District Court and seek relief from the injunction in the event that he can (1) locate a jurisdiction in which a limitations period remains open (thereby, in accordance with *Semtek*, escaping the preclusive effect of the Pennsylvania District Court's judgment), (2) can obtain personal jurisdiction over the Smiths, and (3) is otherwise then entitled to challenge the Texas decrees."). The purpose of the Injunction is to deter Plaintiff from filing suits that cannot otherwise be successful and would simply harass the Smiths by providing civil contempt sanctions against Plaintiff for such filings; the Injunction does not in fact cut-off any of Plaintiff's legal rights. Prohibiting Plaintiff from filing suit in jurisdictions where he would otherwise be barred by the statute of limitations

anyway does inflict in an injury upon Plaintiff. Therefore, any injury about which Plaintiff complains is not fairly traceable to the Injunction or Verbal Order issued pursuant to that Injunction.

Third, because the adopted child was well beyond the age of majority (Kyle was born on July 8, 1992 and the injunction was entered on August 22, 2013) at the time the injunction was entered, any attempt by Plaintiff to continue litigating the issue of his parental rights would be moot. *See, e.g., In re M.T.*, No. 15-0444, 2015 WL 6181409, at *4 (W. Va. Oct. 20, 2015) ("this issue is moot as it relates to M.T. because she reached the age of majority and is free to pursue an adult relationship with petitioner"); *In re Delia S.*, 122 A.D.3d 1449, 996 N.Y.S.2d 855, 856 (2014) (dismissing action for termination of parental rights concerning child who attained age of majority). Plaintiff argues that because a legal relationship continues to exist after the child reaches the age of majority in that, for example, a parent can inherit from a child, that Plaintiff's claim is not moot. (Resp. ¶ 16.) However, Plaintiff does not claim that he has been injured by not being permitted to pursue his right to inherit from his child; Plaintiff claims that he has been injured by being deprived of a relationship with his child. (Compl. At 3; Resp. ¶ 16.) While a plaintiff may be able to pursue legal action to inherit from an adult child, a plaintiff cannot pursue legal action in order to secure a relationship with an adult child. *Walker v. Walker*, 362 Pa. Super. 75, 80, 523 A.2d 782, 784 (1987) (finding court lacked subject matter jurisdiction to compel eighteen-year-old to visit parent). Plaintiff argues that "*Walker* does not represent the proposition that there is no legal relationship whatsoever between a parent and an adult child." (Resp. ¶ 17.) But Plaintiff never alleges a deprivation of any type of legal relationship that might have remained after Kyle reached the age of majority. The Court agrees with Plaintiff that "[i]t is not unusual for adults to seek substantial relationships with their natural parents despite being alienated from a parent for an extended period." (Resp. ¶ 16.) Those types of substantial relationships between two adults, however, are the result of personal choices – not judicial action. Plaintiff alleged that he was injured by the Verbal Order because he was deprived of a relationship with his adult child, but whether or not to permit that relationship is up to Kyle, not the Courts. Therefore, Plaintiff was not injured as a result of the Verbal Order prohibiting further legal action because any attempt to force a legal relationship with Kyle would be mooted by Kyle obtaining the age of majority.

Plaintiff argues that "[t]he resultant injury is 'fairly traceable to the defendant[s]'"

because "David and Kimberly Smith filed the action for injunctive relief and also filed an action resulting in the issuance of the verbal order. The Honorable Alvin Thompson issued the Injunction and the verbal order. The Injunction and verbal order were issued with the enforcement power of the U.S. District Court for the District of Connecticut." (Resp. ¶ 20.) But it was not the Hon. Thompson, the District of Connecticut or the Smiths who deprived Plaintiff of his parental relationship. It was the 225th District Court, Bexar County, Texas that entered a decree terminating the parental rights of Plaintiff in 1992 based on that Affidavit of Waiver of Interest in Child signed by Plaintiff. *Id.* Plaintiff has now tried to relitigate that case at least five times, forcing the Smiths and various other parties to defend and re-defend the order of the Texas state court terminating the parental relationship. The Smiths have defended the adoption and the Hon. Thompson issued an Order protecting the Smiths from being forced to defend the adoption yet another time, but such actions are not the equivalent of depriving Plaintiff of the right to pursue a parental relationship. The right to pursue a parental relationship is cut-off by the doctrine of res judiciata. *Woosley v. The Adoption All.*, No. 04-00-00343-CV, 2001 WL 687571, at *1 (Tex. App. June 20, 2001) ("Appellant's first issue, that the trial court erred in denying his motion to vacate void decrees is barred by the wellestablished principles of res judicata and collateral estoppel."). It is cut-off by the statute of limitations. *Smith v. Woosley*, 399 F.3d 428, 436 (2d Cir. 2005) (no jurisdiction of which we are aware has a limitations period of such length as to leave Woosley's challenges to the Texas decrees now viable, the likely effect of the Pennsylvania judgment is now to bar Woosley from challenging those decrees in any court"). It is cut-off by Kyle reaching the age of majority. *Walker v. Walker*, 362 Pa. Super. 75, 80, 523 A.2d 782, 784 (1987) (finding court lacked subject matter jurisdiction to compel eighteen-year-old to visit parent). Plaintiff has not suffered an injury that is fairly traceable to the named Defendants and thus lacks constitutional standing to pursue his claim. Therefore, this Court lacks jurisdiction.

IV.     **Even if Plaintiff had Standing, S***ua Sponte* **Dismissal of the Honorable Alvin W. Thompson is Necessary Because the Hon. Thompson is Immune from Suit**

Plaintiff seeks $22 million dollars in damages as a result of an injunction issued by the Hon. Alvin W. Thompson of the United States District Court for the District of Connecticut.[4] A

---

[4]     There is no allegation that the United States District Court for the District of Connecticut committed any

judge acting in performance of his judicial duties has absolute immunity from suit and will not be liable for his judicial acts. A long line of Supreme Court precedent acknowledges that, generally, a judge is immune from a suit for money damages. *See, e.g., Mireles v. Waco*, 502 U.S. 9 (1991); *Forrester v. White*, 484 U.S. 219 (1988); *Cleavinger v. Saxner*, 474 U.S. 193 (1985); *Dennis v. Sparks*, 449 U.S. 24 (1980); *Supreme Court of Va. v. Consumers Union of United States, Inc.*, 446 U.S. 719 (1980); *Butz v. Economou*, 438 U.S. 478 (1978); *Stump v. Sparkman*, 435 U.S. 349 (1978); *Pierson v. Ray*, 386 U.S. 547 (1967). There are only two exceptions. First, a judge is not immune from liability for nonjudicial actions. *Forrester v. White*, 484 U.S. at 227-229. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. at 12 (internal citations omitted). Plaintiff argues that the Hon. Thompson acted in complete absence of all jurisdiction and therefore the second exception applies. (Ans. at 3-4; Resp. at 9.)

Plaintiff's first argument that the Hon. Thompson acted without jurisdiction is that "[t]he Injunction purports to interfere with a person's ability to challenge a violation of Due Process." (Resp. at 9.) In support of this argument, Plaintiff concludes that "[i]f a judgment is entered in violation of due process, then that judgment is always ripe for reconsideration; accordingly, the Injunction sweeps too broadly by enjoining litigation regarding the broad issue of whether due process rights were violated." (Resp. at 10.) Plaintiff does not cite a single case to support his first argument. In fact, Plaintiff seems to ignore that many circuits permit, as an extraordinary remedy against vexatious litigants, the entry of a pre-filing injunction. *See, e.g., Ringgold-Lockhart v. Cty. of Los Angeles*, 761 F.3d 1057, 1062 (9th Cir. 2014) (recognizing strict rules for entering pre-filing injunctions); *In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988) (establishing guidelines for issuing pre-filing injunctions) *Pavilonis v. King*, 626 F.2d 1075, 1078 (1st Cir. 1980) (rejecting "the argument that enjoining litigation is unconstitutional"). Even if Plaintiff did have precedential support for his arguments, the statement "the Injunction sweeps too broadly by enjoining litigation regarding the broad issue of whether due process rights were violated" is

---

independent wrong outside the injunction issued by the Hon. Thompson and, in any event, the District of Connecticut is not a "person" who can be sued under Section 1983. Plaintiff argues that the United States District Court can be held vicariously liable under the doctrine of *respondeat superior*, but provides no statutory or judicial support for this proposition. (Resp. at 8.) In fact, the Supreme Court, has plainly held that "vicarious liability is inapplicable to *Bivens* and § 1983 suits." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 692 (1978) (analyzing § 1983 and concluding that Congress did not intend to impose liability vicariously based on *respondeat superior*). Therefore, the District of Connecticut is not a proper party under Section 1983 and is hereby dismissed.

untrue. The Second Circuit specifically amended the Injunction to permit Plaintiff to bring suit in a jurisdiction in which the statute of limitations remains open:

> To avoid having the Connecticut court's injunction inadvertently sweep too broadly, however, we will modify the injunction to permit Woosley to return to the Connecticut District Court and seek relief from the injunction in the event that he can (1) locate a jurisdiction in which a limitations period remains open (thereby, in accordance with Semtek, escaping the preclusive effect of the Pennsylvania District Court's judgment), (2) can obtain personal jurisdiction over the Smiths, and (3) is otherwise then entitled to challenge the Texas decrees.

*Smith v. Woosley*, 399 F.3d 428, 436 (2d Cir. 2005). In other words, if Plaintiff can find a jurisdiction where he would not be barred from bringing suit anyway, he can attempt to litigate his allegation of a due process violation. Therefore, Plaintiff is not enjoined from litigation regarding the broad issue of whether his due process rights were violated; Plaintiff is enjoined from litigation in jurisdictions where he would otherwise be barred anyway by the statute of limitations or the inability to obtain personal jurisdiction over the Smiths. As a result, the Injunction is not unconstitutionally broad. But even if the Injunction were unconstitutional, that does not necessitate the finding that the Hon. Thompson acted in excess of his jurisdiction. *See, e.g., Stump v. Sparkman*, 435 U.S. 349, 359-60 (upholding judicial immunity even where grave errors were committed, including a violation of procedural due process, because jurisdiction existed).

Plaintiff next argues that "[t]he Injunction interferes with a person's right to challenge a state-court decree as void." (Resp. at 10.) Once again, Plaintiff does not cite to a single case in support of this argument. Because this does not call into question the Hon. Thompson's jurisdiction, he is still entitled to judicial immunity.

Finally, Plaintiff argues that "[t]he Injunction involves the issuance of a domestic relations decree."[5] (Resp. at 10.) This Court recognizes that an exception to diversity jurisdiction

---

[5]      Throughout his filings and arguments, Plaintiff ignores that it was he who initially sought relief in federal court in the Western District of Pennsylvania. *Woosley v. Smith*, Civ. A. No. 96-cv-02368 (W.D. Pa.). In addition, Plaintiff ignores that the Second Circuit found that the District of Connecticut was acting to protect the judgment of that federal court in which Plaintiff sought relief. Plaintiff also ignores that it was again he who sought relief in federal court in the Western District of Texas "attempting to overturn the state court judgments denying his requests to vacate the decree of adoption and decree of termination." *Woosley v. Adoption Alliance*, 79 Fed.Appx. 672, at *1 (5th Cir. 2003). In that suit, because Plaintiff specifically "pray[ed] for an order setting aside the adoption decree," the court found the domestic relations exception did apply. *Order of Dismissal*, *Woosley v. Adoption Alliance*, Civ. A. No. 02-cv-372, (W.D. Tex. Oct. 24, 2002). Plaintiff appealed that decision. Plaintiff now argues that "[s]ince state courts are the only type of courts where [domestic relations] matters can be finally decided, it begs the question of why any federal court would want to interfere. If the Plaintiff is not entitled to the state-court domestic-relations relief he might seek, then a state court of competent jurisdiction is entirely capable of rendering that decision." (Ans.

exists with regards to domestic relations matters for "cases involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992). Plaintiff argues that "since the Injunction enjoins Plaintiff from challenging the void decrees, this is arguably tantamount to issuing a child custody decree." (Resp. at 11.) But this argument ignores the fact that Plaintiff is free to challenge the decrees in a jurisdiction where the statute of limitations remains open. In addition, Plaintiff fails to appreciate the narrowness of the domestic relations exception. The domestic relations exception is not intended "to strip the federal courts of authority to hear cases arising from the domestic relations of persons" unless they seek the granting or modification of a divorce, alimony decree, or child custody decree. *Ankenbrandt*, 504 U.S. at 701-02. The Smiths did not request the issuance or modification of a child custody decree and the Hon. Thompson did not grant such an injunction. The Smiths sought to put an end to Plaintiff's vexatious litigation and to collect damages for the tort of intentional infliction of emotional distress, which is well within the bounds of federal jurisdiction established in *Ankenbrandt*. Therefore, the domestic relations exception to federal jurisdiction is inapplicable and the Hon. Thompson acted within his jurisdiction. As a result, the Hon. Thompson is entitled to judicial immunity.

Judicial immunity is not merely immunity from paying a judgment, it is immunity from facing suit altogether. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The Honorable Alvin W. Thompson retains absolute immunity from facing suit and therefore he must be dismissed.

**V.    Even if Plaintiff had Standing, S*ua Sponte* Dismissal of the Individual Defendants, David H. Smith and Kimberly A. Smith, is Necessary Because Private Individuals Cannot Properly Be Sued Under Section 1983**

Plaintiff brings only one cause of action, a civil rights suit under Section 1983. Plaintiff argues only that "David and Kimberly Smith set in motion the governmental power that quashed Plaintiff's fundamental civil rights; accordingly, the Smiths acted under color of state law for the

---

6-7.)

Plaintiff cannot on one hand seek relief from the federal courts and on the other argue that the federal courts are without jurisdiction. *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 778 (3d Cir. 2001). Judicial estoppel may be imposed when: (1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party to be estopped changed his or her position in bad faith in a culpable manner threatening to the court's authority or integrity, and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity. *Id.* Plaintiff is hereby reminded of the importance of candor to the tribunal and the possibility of judicial estoppel as a sanction for the failure to be candid with the Court.

14

purposes of Section 1983." (Resp. at 12.) Plaintiff, once again, fails to cite to a single case to support this proposition. Nonetheless, the Supreme Court has been clear that "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge," the private party must "corruptly conspire with a judge." *Dennis v. Sparks*, 449 U.S. 24, 28 (1980). Plaintiff ignores this long-standing principle that a civil rights action under Section 1983 can only be brought against state actors or those who conspire or act jointly[6] with state actors to deprive individuals of their civil rights. There is no allegation that David and Kimberly Smith are state actors. There is no allegation that David and Kimberly Smith conspired or otherwise bribed the Hon. Thompson to deprive Plaintiff of his rights, thereby making them state actors.[7] Simply because David and Kimberly Smith prevailed in their lawsuit before the Hon. Thompson cannot make them state actors subject to suit under Section 1983. *Id.*

Furthermore, there is no argument for extending, modifying, or reversing existing law that would permit a Section 1983 suit to proceed against private parties. Therefore, the claims and other legal contentions are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law." FED. R. CIV. P. 11. The claims against the Smiths are presented for the same improper purpose as Plaintiff's countless prior lawsuits – to harass the Smiths. Because Plaintiff's Section 1983 suit against the Smiths has no basis in the law and only serves to continue twenty-two years of harassment, this Court *sua sponte* dismisses the Smiths.

## VI.     Even If Plaintiff had Standing and Defendants Were Proper Parties, *Sua Sponte* Dismissal of the Individual Defendants Is Warranted under *Poulis*

---

[6] The Supreme Court has held that private persons who invoke state replevin, garnishment, and attachment statutes act jointly with state officers and therefore act "under color of law" for purposes of Section 1983. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 942 (1982). There is no allegation that David and Kimberly Smith acted jointly with state actors by invoking state replevin, garnishment, or attachment statutes.

[7] Plaintiff requests leave to amend the Complaint as to the Smiths. Plaintiff provides no argument for why he should be permitted to amend his complaint nor provides any explanation as to how he will amend his complaint to correct this fatal deficiency, which would require alleging that private persons are in fact state actors or alleging with factual specific that these private persons corruptly conspired with a judge. Therefore, leave to amend would be futile. In addition, because it appears that Plaintiff is acting in bad faith or at least in a manner that is causing unfair prejudice to the Smiths, as the Court will discuss in the following section, leave to amend would likewise be inequitable. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) ("Under Rule 15(a), if a plaintiff requests leave to amend a complaint vulnerable to dismissal before a responsive pleading is filed, such leave must be granted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment.") (internal citations omitted).

The Third Circuit has enumerated six factors for courts to consider in determining whether dismissal as a sanction is warranted. Although the Court need not address the factors here in light of Plaintiff's lack of standing, the Court will do so to illuminate why leave to amend would be futile in this case. The factors include: "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense." *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984). The Court warned Plaintiff that it was considering dismissal of Plaintiff's case as a sanction for harassment pursuant to Federal Rule of Civil Procedure 41(b) and *Poulis*. In addition, the Court warned Plaintiff that "[b]ecause in this case the Court is considering dismissal as a sanction for harassment rather than unnecessary delay, the Court has substituted the language used in Poulis accordingly." (Dkt No. 8.) In response, Plaintiff asserts that "[t]his case is intended as a good faith effort for justice to finally be served in a case with an admittedly long history." (Resp. at 13.) Plaintiff does not address the *Poulis* factors individually; instead Plaintiff continues once again to re-argue that the 1992 decisions by the Texas state court are erroneous and void. (Resp. at 13.) That argument has been denied on direct appeal, denied in a collateral attack, denied as barred by the Rooker-Feldman doctrine, denied as barred by the doctrine of res judiciata, and denied as barred by the statute of limitations. Plaintiff has filed suit regarding this matter seven times. Plaintiff has filed suit against the Smiths four times. Plaintiff has been subject to sanctions. Yet Plaintiff provides no explanation as to how this fifth suit against the Smiths is not simply further harassment. Based on a thorough consideration of the *Poulis* factors, the Court finds that the only sanction that will sufficiently protect the Smiths from further harassment is dismissal.

### A.  *Plaintiff is Personally Responsible*

Plaintiff is personally responsible for twenty-two years of litigation where he proceeded to litigate and relitigate a 1992 Texas State Court Decree *pro se* despite having his claims dismissed as unmeritorious, outside the statute of limitations, precluded by res judicata, and precluded under *Rooker-Feldman*. Plaintiff has faced sanctions and contempt for his vexatious litigation. Plaintiff became barred as an attorney in Pennsylvania in 2013, but does not bring the

instant suit *pro se*. Instead, an attorney, Michael Doneson, practicing at a law firm that bears the Plaintiff's name, Woosley Naragon, LLC, is the attorney of record. That attorney does not demonstrate any knowledge of the long and tortured history of this case. If Plaintiff himself is not driving the litigation, it is clear that he has either failed to fully inform his colleague of the true history of this case or his colleague is willing to face Rule 11 Sanctions. Because it seems unlikely that any attorney would knowingly put themselves in firing line of Rule 11 sanctions, the most logical conclusion is that Plaintiff is personally responsible for bringing yet another suit and failing to disclose the judicial history of this case, including availing himself of federal courts in the past before now complaining that federal courts are without jurisdiction. The conclusion that Plaintiff is personally responsible is further supported by the fact that Plaintiff is a barred attorney with knowledge of the legal system, but continues to use that system to harass the Smiths nonetheless.

### B.   Defendants Have Been and Will Be Prejudiced

The second *Poulis* factor typically directs the court to consider prejudice to the defendant caused by the failure to meet scheduling orders and respond to discovery. *Poulis*, 747 F.2d 863, 868. Because the contumacious conduct in this case involves unmeritorious, vexatious litigation, the court instead considers the prejudice caused by this harassing litigation.[8] David and Kimberly Smith have been named in at least five separate lawsuits filed by the Plaintiff in at least five separate fora. Each time, Defendants are forced to hire counsel in order to defend against the same claim that a 1993 Decree is invalid. From what the Court can gather, the legal history to which the Defendants have been subjected is as follows. First, Plaintiff filed suit in Texas State Court in 1993 where Plaintiff's claims were denied. That denial was upheld by the Texas Court of Appeals. *Woosley v. Smith*, 925 S.W.2d 84, 85–86 (Tex. App. San Antonio 1996). Plaintiff then filed a second Texas State Court suit followed by another Texas State Court appeal where the Texas Court of Appeals upheld the denial of Plaintiff's claims on the basis of res judicata and collateral estoppel and further upheld the imposition of sanctions for a frivolous pleading. *Woosley v. Adoption Alliance* ("*Woosley–Texas II*"), No. 04–00–00343–CV, 2001 WL 687571

---

[8] Even if the Court were to adhere to the strict language of the second *Poulis* factor, dismissal would still be warranted because "[e]ach factor need not be satisfied for the trial court to dismiss a claim." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 221 (3d Cir. 2003) (citing *Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir. 1988)). The first, fourth, fifth, and sixth factors weigh so heavily in favor of dismissal, excluding the second and third factors does not affect the appropriateness of dismissal in this case.

(Tex. App. San Antonio June 20, 2001). Plaintiff then filed a third suit in the Western District of Pennsylvania in 1996, which was dismissed as time-barred and affirmed by the Third Circuit. *Woosley v. Smith*, 191 F.3d 446 (3d Cir. 1999) (table). Plaintiff then filed a fourth suit in the Connecticut Superior Court, which upheld the Texas State Court decree and found that Plaintiff's parental rights had been terminated. *Woosley v. Smith*, FA020392653(S), 2003 WL 1490317, at *2 (Conn. Super. Ct. Mar. 3, 2003). Plaintiff then filed a fifth suit to contest the adoption in the Western District of Texas, which was dismissed under the *Rooker-Feldman* doctrine and affirmed by the Fifth Circuit. *Woosley v. The Adoption Alliance, et al.*, D.C. Dkt. No. 02-372, App. Dkt No. 02-51304 (5th Cir. Nov. 25, 2003). Plaintiff then filed a sixth suit in the Connecticut Superior Court, a Writ of Habeas Corpus Concerning Custody of Child, which was dismissed *sua sponte* as unmeritorious and never docketed. This led Plaintiff to file his seventh suit against the Connecticut Superior Court and against Unnamed Prosecutors who charged him in connection with his attempted kidnapping of Kyle. Complaint at 2-3, *Woosley v. Superior Court of Fairfield at Bridgeport and Yet Unnamed Prosecutors of Fairfield County*, No. 05-704 (D. Conn. May 2, 2005).

Although Defendants were only named parties in four of Plaintiff's seven suits, all seven suits threatened to invalidate custody over their adoptive child, Kyle. The prejudice to Defendants was clearly greater in suits where they were named parties, however, the past and continuing prejudice from twenty-two years of litigation cannot be ignored. To permit Plaintiff to continue in this matter would serve only to prejudice Defendants even further.

### C. *Plaintiff Has a History of Harassing Defendants*

The third *Poulis* factor directs the Court to look at whether the Plaintiff has a history of dilatoriness. This, however, again assumes that the suit is dismissed as a sanction for delay. Because the issue here is harassment, the Court believes it is more important to note that Plaintiff has a long history of using the legal system for purposes of harassment. Plaintiff was previously sanctioned by the trial court in Texas, which was upheld by the Texas Court of Appeals. *Woosley v. The Adoption Alliance*, No. 04-00-00343-CV, 2001 WL 687571, at *1 (Tex. App. June 20, 2001). Plaintiff was again sanctioned (and held in contempt) by the United States District Court for the District of Connecticut, not once, but twice. *Smith v. Woosley*, No. 03-143 (D. Conn. Sept. 20, 2006) (ordering contempt sanctions of $7,642.51); *Smith v. Woosley*, No. 03-143 (D. Conn. Dec. 20, 2013) (ordering treble damages in the amount of $33,501.90). Despite this, and

the fact that the adopted individual over which all of this litigation has taken place is now well over the age of majority, Plaintiff has not been deterred from bringing a fifth suit against the Smiths.

### D. Plaintiff's Conduct is Willful or in Bad Faith

The fourth *Poulis* factor looks at whether the conduct of the party or the attorney was willful or in bad faith. As previously discussed under Section A, it is unclear to what extent Plaintiff's attorney is acting willfully or in bad faith. At the very least, the attorney has failed to individually investigate the case, as a simple WestLaw or LexisNexis search would have alerted him to his client's precarious history. The long history of this litigation and Plaintiff's failure to disclose the true history of this case to the Court, and possibly his attorney, support a finding of bad faith. This finding is further buttressed by Plaintiff, himself an attorney, and his attorney's decision to include the adoptive parents as parties in a Section 1983 suit when there is not even an allegation that the parents were state actors or conspirators. *Dennis v. Sparks*, 449 U.S. 24, 28 (1980).

### E. There is No Alternative to Protect Defendants

The Smiths have already sought an injunction against Plaintiff. They have sought and won sanctions multiple times, including treble damages. They have sought and won a request to hold Plaintiff in contempt. They have pressed criminal charges when Plaintiff kidnapped their son. Their son is now well over the age of majority and yet Plaintiff continues to harass the Smiths with endless litigation. There is no alternative method of protecting the Smiths from defending against a fifth unmeritorious suit but to consider *sua sponte* dismissal. If this Court were to permit Plaintiff to proceed, either the Smiths would be forced to appear to contest personal jurisdiction or default would be entered against the Smiths for failure to appear, which the Smiths would then be forced to collaterally attack. The Court is especially hesitant to permit the case to proceed down this route when personal jurisdiction over the Smiths is unlikely.[9] Therefore, the Court sees no acceptable alternative to protect the Smiths from further costly, time-consuming, and likely upsetting, litigation.

---

[9] The Third Circuit "has held that 'because personal jurisdiction may be conferred by consent of the parties, expressly or by failure to object, ... a court may not *sua sponte* dismiss for want of personal jurisdiction, at least where a defendant has entered an appearance by filing a motion.'" *Azubuko v. E. Bank*, 160 F. App'x 143, 146 (3d Cir. 2005) (citing *Zelson v. Thomforde*, 412 F.2d 56, 59 (3d Cir. 1969)). Although this case is distinct because the Smiths have not made an appearance, the Court will not *sua sponte* dismiss on the basis of personal jurisdiction, but merely consider the impact of the issue on the prejudice to the Smiths.

### F.  Plaintiff's Claim is Wholly Without Merit

As discussed in the foregoing sections, Plaintiff's claims are wholly without merit.

## VII.   Conclusion

Based on the foregoing analysis, the Court *sua sponte* dismisses Plaintiff's claims against all Defendants with prejudice. Leave to amend is not granted as amendment would be futile and inequitable.

Further, in light of the repeated abuse of the legal system and harassment of the Smiths by Plaintiff, an attorney barred in the State of Pennsylvania, this matter will be referred to Chief Judge Tucker pursuant to Local Rule 83.6(V)(A).

An appropriate Order follows.

BY THE COURT:


/s/ C. Darnell Jones, II

C. DARNELL JONES, II      J.
